Pearson, J.
 

 “Ignoraniia legisnerninem excúsate
 
 Everyone competent to act for himself is presumed to know the law. No one is allowed to excuse himself by pleading ignorance. Courts are compelled to act upon.this rule, as well in criminal as civil matters. It lies at the foundation of the administration of justice. And there is no telling to what extent, if admissible, the plea of ignorance would be carried, or the degree of embarrassment, that would be introduced into every trial, by conflicting evidence upon the question of ignorance.
 

 In civil matters, it is admitted, the presumption is frequently not in accordance with the truth. The sales of property are complicated systems — the result, “not of the reason of any one man, but of many men put together lienee, they are not often understood, and more frequently not properly applied, and the presumption can only be justified upon the ground of necessity.
 

 But, in criminal matters, the presumption most usually accords with the truth. As to such as are
 
 mala in se,
 
 every one has an innate sense of right and wrong, which enables him to know when ho violates the law, and it is of no consequence, if he be not able to give the name, by which the offence is known in the law books, or to point out the nice distinctions between the different grades of
 
 *344
 
 offence. As to such as are
 
 "mala prohibüa,”
 
 they depend upon statutes printed and published and put within the reach of every one ; so that no one has a right to complain, if a presumption, necessary to the administration of the law, is applied to him. To allow ignorance as an excuse would be to offer a reward to the ignorant.
 

 The defendant voted, when he was not entitled by law to vote. lie is presumed to know the law. Hence, he voted, knowing that he had no right, and, acting with this knowledge, he necessarily committed a fraud upon the public— in the words of the Act, he
 
 knowingly
 
 and
 
 fraudulently
 
 voted when he was not entitled to vote. It being proved on the part of the State that he voted, not having resided within the bounds of the company for six months next preceding the election, a case was made out against him.
 

 , He offered to prove, for the purpose of rebutting the inference of-fraud, that he had stated the facts to a respectable gentleman, who advised him he had a right to vote. His Honor held the testimony inadmissible. We concur in that opinion. The evidence had no tendency to rebut the inference of fraud, for the inference was made from his presumed knowledge of the law, and that presumption could not be met by any such proof, without introducing all the evils, which the rule was intended to avoid. The question, in effect, was : shall a man be allowed, in excuse of a violation of the law, to prove, that lie was ignorant of the very law, under which he professed to act,-and under which he claimed the privilege of voting? If he was not ignorant of the law, and that he cannot be heard to allege, then, he voted
 
 knowingly,
 
 and, by necessary inference,
 
 fraudulently.
 

 . Jin indictment for extortion charges, that the dt fendant received the fee “unlawfully,
 
 corruptly, deceitfully
 
 and extorsively.” This averment the State must prove. It is done by showing, that the defendant received what the law does not allow him to take ; for, the presumption
 
 *345
 
 is, “he knew the law upon the subject of fees to be taken by himself,” and the inference from such knowledge is, that he acted “corruptly and deceitfully,” (words quite as strong as knowingly and fraudulently,) unless it is shown, that he did so by some inadvertence, or mistake in calculation. He cannot excuse himself for taking more-than the legal fee, by saying, that he was misled by the advice of an attorney. If such, or the like excuses were admitted, it would hardly ever be possible to convict. He might always contrive to ground his conduct upon misapprehension or improper advice.
 
 State
 
 v.
 
 Dickens,
 
 1. Hay. 406.
 

 It would be a different question, if the defendant had-stated the facts to the judges of the election, and they had' decided in favor of his right to vote, for their decision would rebut the presumption of knowledge on his part, in a manner contemplated by law.
 

 The case was ably argued for the defendant. It was insisted, that it was necessary for the State to aver and prove, that the defendant voted knowingly and fraudu lently. That position is admitted. The reply is, the averment was made and was proved ; for, proof being made that he voted when he was not entitled to vote, the presumption is, that he knew the law, and
 
 fraud
 
 is the necessary inference, as corruption and deceit were in the case above cited. It cannot be contended, that to fix him with knowledge, the State must show, that some one read and explained the law to him. or to fix him with fraud, that it must be proven, he had been bribed. If so, the Statute is a dead letter.
 

 Our attention was called to the fact, that the Act of 1S44, making the offence indictable, uses the words, “knowingly and fraudulently,” which words are not used in the Act of 1777, imposing a penalty.
 

 To incur the penalty under the Act of 1777, the voting must be unlawful, and it roust be done knowingly and
 
 *346
 
 fraudulently in the sense above explained. If one, having a deed for fifíy acres of land, votes in the Senate, and it turns out that the deed only contains forty-nine acres, the penalty is not incurred, unless he knew the fact at the time he voted. So, if one votes for a constable, and it turns out that the dividing line includes him in another company, the penalty- is not incurred, unless he knew the fact or believed that the true lino put him in the other company'. There is not in either case that criminal intent, which is a necessary ingredient ot the offence, whether it be punished by a penalty or by indictment. The Act of 1844 expresses in so many words what the law would have implied. It is a strained inference, that, by' so doing, the Legislature intended to make the case of illegal voting an
 
 “exception,”
 
 and to
 
 take
 
 it
 
 out
 
 of
 
 the
 
 rule
 
 “ignorantia legis,”
 
 a rule which has always been acted upon in our law, and in the laws of every nation, of which we have any knowledge, and without which, in fact, the law cannot be administered. The inference sought to be made results in this — the Legislature did not intend the Act of 1844 to be carried into effect — it was intended to be
 
 “hrutvm fulmén.”
 
 No reason has been suggested for making an exception in this case. The only additional qualification, to that of a voter for a me mber of the House of Commons, is a residence of six months in the captain’s company. This is not complicated or difficult to be understood. Why make the exception and offer a reward for ignorance in this particular case ? Such a construction cannot be admitted, unless the law makers had declared their intention by positive enactment.
 

 Per Cubiam.
 

 There is no error in the Court below and the same must be so certified.