STATE v. C. E. McLEAN et al.

*Indictment for Unlawful Opening Graves—Intent—Trial—Instructions—Mayor and Commissioners—Official Acts—Jurisdiction—Mistake—Defence.*

1. When an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which imparts to it the character of an offence.

2. Under Section 1 of Chapter 90, Acts of 1885, providing that any person who shall without due process of law or the consent of the next of kin of the deceased, open any grave for the purpose of removing anything interred therein, shall be guilty of a felony, the doing the forbidden act itself is conclusive as to the intent with which it was done.

3. On the trial of several defendants charged with an offence, upon an intimation from the Court as to the law and an indication from the counsel for the defendants that they would not argue the case to the jury except as to the guilt of two of them, the State's solicitor stated that he would consent to a verdict of not guilty as to such two defendants. The defendants' counsel, after consultation, then stated that they would argue the case as to the others whereupon the solicitor withdrew his proposition as to the verdict concerning the two defendants. *Held,* that it was proper for the trial Judge to refuse to direct the State's solicitor to enter a verdict of not guilty as to the two defendants.

4. At a meeting of the Board of Commissioners of a town, at which the Mayor presided, a report of the cemetery committee was adopted, recommending that, unless parties, who had taken lots in the town

cemetery and had not paid for them, should pay the amount due within sixty days on notice, the bodies buried in such lots should be removed to the free part of such cemetery. Subsequently, in reply to a question of one of the commissioners as to the legal right to remove the bodies, the Mayor said: "The way is open: go ahead and remove them;" *Held,* that the Mayor was individually guilty of counseling, procuring and commanding an act within the meaning of Section 977 of *The Code,* the committing of which afterwards was a felony.

5. In such case, the act of the Mayor and Commissioners was outside of their official jurisdiction and hence they were individually liable to indictment for commanding and procuring persons to commit a felony.

6. In such case the Mayor and Commissioners, acting outside of their jurisdiction, were bound to know the requirements of the Statute and could not be heard to say that they acted in good faith and were honestly mistaken in the scope of their official power.

INDICTMENT against C. E. McLean, J. H. Heritage, J. C. Holt and others, under Section 977 of *The Code,* for counseling, procuring and commanding the removal of a body buried in a cemetery without due process of law and without the consent of the next of kin of the deceased, tried at Spring Term, 1897, of ALAMANCE Superior Court. The facts are stated in the opinion. The defendants' prayers for instructions were as follows:

"First. There is no evidence against Joseph C. Holt and J. H. Heritage and the jury will return a verdict of not guilty as to them.

Second. If the jury believe from the evidence that C. E. McLean was Mayor of the town, that he did not vote for the order of removal, he would not be guilty, and they must so find; and the fact that he was acting as Attorney of the town and in his capacity as Attorney, advised the Board of Commissioners that in his opinion they had the right to order the removal, would not make him guilty.

Third. It appearing from the evidence that the defendants were Commissioners of the town of Burlington; and that in ordering the removal of the bodies they acted in

their official capacity, and there being no evidence of any corruption in this action, they cannot be convicted.

Fourth.   The defendants being proven by the evidence in this case to be the Mayor and Commissioners of the town of Burlington, and the acts for which they are indicted having been proven to have been done by them in their official capacity, they cannot be indicted individually and the jury should acquit.

Fifth.   Upon the whole evidence in this case, the Court instructs you that the Statute under which this indictment is found does not apply to this case, and the jury should acquit.

Sixth.   That if the jury believe defendants were acting in their official capacity when they advised and directed the removal of the remains from the grave and their reinterment in another part of the cemetery, and that they acted in good faith and were honestly mistaken in the scope and extent of their power in regard to the matter, and their mistake was in reason and such as reasonable men of ordinary intelligence might make, after consideration, then the defendants would not be guilty of the felony charged in the bill.

Seventh.   That notwithstanding the defendants may have violated the letter of the law, yet if their acts do not come within its spirit and the mischief intended to be suppressed by it, then the defendants would not be guilty and that the mischief intended to be suppressed by the Statute is the desecration and robbery of the graves of the dead."

The defendants, except Holt and Heritage, were convicted and appealed.

*Mr. Zeb V. Walser, Attorney General,* for the State.

*Messrs. E. S. Parker, J. T. Morehead, W. H. Carroll, John G. Bynum* and *T. B. Womack,* for defendants (appellants).

MONTGOMERY, J.: The disturbing of graves, by Chapter 90 of the Acts, 1885, is made a felony, in the following words: "Section 1. That any person who shall without due process of law, or the consent of the surviving husband or wife, or the next of kin of the deceased, and of the person having the control of such grave, open any grave for the purpose of taking therefrom any such dead body, or any part thereof buried therein, or anything interred therewith, shall be deemed guilty of a felony, and upon conviction thereof shall·be fined or imprisoned or both, at the discretion of the Court."

The defendants were indicted under Section 977 of *The Code* for counseling, procuring and commanding certain named persons, all of them charged with acting without due process of law and without the consent of those persons whom the Statute requires should be consulted and their consent procured, to open the grave of Nathaniel Small for the purpose of taking therefrom his dead body and to actually remove the body from the grave. The defendants, Holt and Heritage were acquitted. At the time the offence was committed the defendant McLean was Mayor of the town of Burlington, the defendant Cates was keeper of the town cemetery, and the other defendants, Staley, Sellars, Hall, Pickett, Sutphin and Hughes were town Commissioners. The defence set up by McLean was that he was the attorney at law of the town and that the part he took in the matter was simply as legal adviser to the Board of Commissioners. He admitted on the trial that he advised the other defendants that they could lawfully remove the body. The other defendants, except Holt and Heritage, undertook to defend their action on the ground that, although they commanded, counseled and procured the opening of the grave and the removal of the body, their action was in the discharge of their official duties and under due process of

law and in good faith.  The following facts were made clear on the trial and were undisputed.  Small died in 1887 and was buried in the Lutheran cemetery in the town of Burlington.  Several years afterwards the town authorities by consent of all persons interested, at the expense of the town, removed the bodies which had been buried in the Lutheran cemetery to Pine Hill, the town cemetery.  The body of Small was among the number removed and it was reinterred in a lot in Pine Hill.  On the fifth of January, 1897, a considerable time after the reinterment of Small's body, the town authorities, who were the defendants in this prosecution, in regular meeting, adopted a report made by the committee on the business of the cemetery which was in part in the following words: "Section 1.  We find that eighteen lots have been taken and used by parties who have paid nothing for the same and that said parties have no note or memorandum in writing in regard to the transaction, signed by the party to be charged, and as to these lots the committee recommend that the Secretary of the Board of Commissioners notify the parties who claim the same, that, unless they come forward and pay for said lots in full within sixty days from the date of said notice, the bodies buried on said lots will be removed to that part of the cemetery which is free."

That J. W. Small, the next of kin of Nathaniel Small, received on February 1st, 1897, a note addressed to him by the town authorities in the following words: "Burlington, N. C., Feb. 1st, 1897.  Mr. J. W. Small, Dear Sir:—At a recent meeting of the Board of Commissioners held at the Mayor's office, the following resolution was adopted: "*Resolved*, That all parties who have buried on the lots of the City Cemetery of Burlington, N. C., and who have not paid for the same, take notice that unless they settle for the

121—75

same in less than sixty days from the date of this notice, that the bodies will be removed to that part of the cemetery which is free.    The books show your indebtedness is $13.40. Please settle promptly.    Respectfully, J. C. Staley, Sec."

That J. W. Small declined to pay the amount and forbade the removal of the body; that the body was removed from the lot on which it was buried in Pine Hill cemetery to the free part of the cemetery.

The first assignment of error on the part of the defendants relates to the refusal of his Honor to admit testimony offered to show the *bona fides* of the defendants in the matter of their having ordered, procured and commanded the opening of the grave and the removal of the body.    The question, then, is whether or not it is necessary to allege and prove a felonious intent or indeed any specific intent on the part of the defendants other than the intent to do which they actually did, and which was forbidden by the Statute in language plain and certain.    There are many decisions of this Court to the effect that the only intent necessary to be shown in the doing of an act which is forbidden by law is the intent to do the act.    If however a grave should be opened and a dead body removed therefrom by a person who had made an honest mistake as to identity of the grave and body, after having received the permission of the next of kin of the person whose grave he thought he was opening, in such case the intent would not exist to do the act.    But in the case before us the defendants did exactly what they *intended* to do; they knew whose body they had commanded to be removed, they knew the assigned reason for which it was ordered to be removed and they knew that the removal was opposed by the next of kin.    In *State* v. *Smith*, 93 N. C., 516, it is said by the Court; "It was not required of the State to prove more than that the forbidden act was intentionally done," and in the same

opinion the Chief Justice quotes the language used by the Court in *State* v. *King*, 86 N. C., 603, "When an act forbidden by law is intentionally done *the intent to do the act* is the criminal intent which imparts to it the character of an offence; and no one who violates the law, which he is conclusively presumed to know, can be heard to say that he had no criminal intent in doing the forbidden act." In *State* v. *McBrayer*, 98 N. C., 619, it is held that "when the Statute plainly forbids an act to be done and it is done by some person, the law implies conclusively the guilty intent although the offender was honestly mistaken as to the meaning of the law he violates." "When the language is plain and positive and the offence is not made to depend upon the positive wilful intent and purpose, nothing is left to interpretation." "The criminal intent is inseparably involved in the intent to do the act which the law pronounces criminal." *State* v. *Voight*, 90 N. C., 741. To the like effect are the decisions in *State* v. *Kittelle*, 110 N. C., 560; *State* v. *Downs*, 116 N. C., 1064; *State* v. *Chisenhall*, 106 N. C., 676; *State* v. *Scoggins*, 107 N. C., 959.

The counsel of defendants admitted that it was not necessary in trial for misdemeanors to allege and prove any specific intent where the act was forbidden by Statute, but they insisted that the rule did not apply in cases of felony. We cannot upon reason or authority see the distinction attempted to be drawn. In felonies at common law (except those in which malice is presumed) the intent has to be proved for the reason that the doing of the act itself which constitutes the offence in so many words is not denounced. As, for instance, upon the trial of one indicted for larceny the felonious intent must be proved because the taking of the goods might be shown to have been done by way of trespass, or under a *bona fide* claim of right. The law does not make the taking of the goods larceny, the taking might

be under a claim of right or in the way of trespass, but it makes the taking of the goods with a felonious intent the crime of larceny. In the case before us the law denounces as a felony the very act itself which the defendants committed.

We see no reason why the Legislature should not, equally in misdemeanors and in felonies, make the forbidden act itself conclusive as to the intent with which it is done. But we have an authority directly on the point. In *State* v. *Chisenhall*, 106 N. C., 676, where the defendant was indicted for abduction, the Court held that "it was necessary for the State to have shown the intent of the defendant. There is nothing in our Statute which requires that the abduction should be with a particular intent." It was argued here for the defendants that the last cited authority was not against their position because, under our Statute, abduction was not a felony. We think that the counsel were in error. Under our Statute a person convicted of abduction may be sentenced to the penitentiary for a period not exceeding fifteen years; and the Statute of 1891 defined a felony to be a crime which is or may be punishable by either death or imprisonment in a State prison. The case on appeal sets forth that "After the case was closed, and after a free discussion of the law upon defendants' prayer for instruction and intimation from the Court as to law, it was indicated that there would be no argument to the jury except as to Heritage and McLean, and thereupon the Solicitor said, to shorten the case, he would consent to a verdict of not guilty as to McLean and Heritage, and so stated to the Court. In a few moments a consultation was held by the counsel for the defendants and they announced that they would argue the case to the jury as to the others, and thereupon the Solicitor said that he would let the jury pass upon the question as to the guilt of all of them and withdrew his proposition, refused

to consent to anything about it. His Honor ruled that it was for the jury to say what verdict they would render and declined to compel the Solicitor to enter a verdict of not guilty as to the two defendants, Heritage and McLean, and defendants excepted."

The second and third assignments of error are directed to the refusal of his Honor to sustain the exception of the defendants concerning the agreement between the Solicitor and the defendants' counsel at the trial. Nothing need be said about that ruling of his Honor except that it was so clearly right that we do not see on what ground any just exception could be taken. The fourth assignment of error refers to the refusal of the Court to give the seven special instructions prayed for by the defendants.

I. The refusal to give the first prayer can be dismissed with the statement that the defendants, Holt and Heritage, for whose benefit the prayer was made, were both acquitted; the first named because he was not present at any of the meetings at which the opening of the grave and the removal of the body were discussed, and the last named because he opposed the course pursued by the other defendants.

II. The Court was asked to instruct the jury "that, if they believed from the evidence that McLean was Mayor of the town; that he did not vote for the order of removal, he would not be guilty and they must so find; and the fact that he was acting as attorney of the town and in his capac- ity as attorney advised the Board of Commissioners that, in his opinion, they had the right to order the removal, would not make him guilty." His Honor would have been justi- fied in refusing to give this instruction upon the ground that, in its last clause, it assumed as a fact that which had to be passed on by the jury; that is, that McLean was acting as attorney of the town and in his capacity as attorney advised the Board. His Honor, however, gave the instruction, adding

thereto the words "unless as Mayor he commanded or pro-
cured the opening of the grave and the removal of the
remains of which you must be satisfied beyond a reasonable
doubt before you can convict him." The defendant except-
ed to the addition made by his Honor. The exception is
not sustained. McLean's guilt did not depend upon his
voting upon the command and order of removal. He could
have counseled, commanded and procured the removal
without a vote. One of the witnesses, Staley, testified that
at the last meeting of the defendants in March or April
when final action was taken, no vote was had; that it was
simply remarked that the notice given at a former meeting
was sufficient, and that Cates was instructed to carry out
that notice to remove the bodies. In fact, the defendant
McLean himself said that no vote was taken at that meeting,
that some one remarked that no vote was necessary, that
the previous action was sufficient. He also testified that his
legal opinion was asked and he gave it, and no member
objected. The defence of McLean seems to be very much
strained, but it finds no sympathy in this Court. His
Honor did him more than justice in the trial. He himself
testified that at the meeting in January, 1897, the report of
the Cemetery Committee in which it was recommended that,
unless parties who had taken lots and who had not paid for
them came forward and did so within 60 days from the
time of notification, the bodies buried on the lots would
be removed to that part of the cemetery which is free, was
adopted and spread on the minutes. That action could not
have been done without his being a party to it. He must
have put the vote and declared the result. This was direct-
ly participating in the crime of which the defendants have
been indicted and convicted. The act which was ordered to
be done was the beginning of the crime which was com-
mitted. That action was not within their jurisdiction, and

the act contemplated and ordered, amounted to a felony under our law. It is true that McLean testified that he was the attorney of the town and that he only acted as such attorney and not as Mayor; that (to use his own language) "he advised the Board, as its attorney, that they had the right to remove the bodies; he thought so then and thinks so now." But there was another witness in the case, William Nance, who testified that McLean, in reply to a question of Heritage as to the legal right to remove the bodies, said "the way is open, go ahead and remove them." His duty as an attorney ended when he gave his legal opinion (if, indeed, he could act in the dual capacity of Mayor and legal adviser to himself and the Board) that they had the right under the law to remove the bodies; when he went further and said "go ahead and remove them" he became an individual actor and counseled, procured and commanded an act the committing of which afterwards was a felony.

III. His Honor was right in refusing to give the third prayer for instructions for the reasons given by us in discussing the second prayer.

IV. The fourth prayer for instructions is in the following words: "The defendants being proved by the evidence in this case to be the Mayor and Commissioners of the town of Burlington and the acts for which they are indicted having been proved to have been done by them in their official capacity, they cannot be indicted individually and the jury should acquit." The defendants were not indicted as Mayor and Commissioners for any misconduct in office; they were indicted as individuals for counseling, procuring and commanding persons to commit a felony, i. e., to open the grave of Nathaniel Small and to actually remove the body without due process of law and without the permission of such person as the law required them to have. The charge was that they were not acting within the line of their

duty as Mayor and Aldermen; that the matter was not only not within their jurisdiction but that, in their action, they were commanding and procuring persons to commit a felony. The defendants cannot be said to have acted in their official capacity in respect to a matter which was not only not a part of their duty to the public but in its performance was a positive crime against the State. His Honor properly refused to give the instruction.

V. There was no error in the refusal of the Court to give the 5th prayer of instruction for the reasons already given.

VI. The 6th instruction was as follows: "If the jury believe the defendants were acting in their official capacity when they advised and directed the removal of the remains from the grave and their reinterment to another part of the cemetery, and they acted in good faith and were honestly mistaken in the scope and extent of their power, and their mistake was in reason and such as reasonable men of ordinary intelligence might make, after consideration, then they would not be guilty of the felony charged." This request is a singular one when it is seen that the defence relied on was that they were proceeding under the due process of the law. Can a man be allowed to plead ignorance of a law under which he is professing to act? "Ignorance of the law excuses no one." This may be sometimes a hard rule but without it society, as we have it organized, would go to pieces. "It lies at the foundation of the administration of justice. And there is no telling to what extent, if admissible, the plea of ignorance would be carried, or the degree of embarrassment that would be introduced in every trial by conflicting evidence upon the question of ignorance." *State* v. *Boyett,* 32 N. C., 336. If the defendant Commissioners meant that the advice of counsel partly made their mistake reasonable, and such as reasonable men might make after consideration, that cannot

STATE *v.* McLEAN.

avail them. In *State* v. *Downs*, 116 N. C., 1064, Justice Clark for the Court said : "Ignorance of the law excuses no one, and the vicarious ignorance of counsel has no greater value. *State* v. *Boyett*, 32 N. C., 336. The law does not encourage ignorance in either. *State* v. *Dickens*, 20 N. C., 406. If ignorance of counsel would excuse violation of the criminal law, the more ignorant counsel could manage to be, the more valuable and sought for, in many cases, would be his advice." It is not to be understood, however, that, if the Mayor and Board of Commissioners of a town or city acting within the line of their duty and in reference to matters clearly within their power, should make an honest mistake without negligence as to the law governing their action, they would be liable therefor either criminally or civilly. Within their jurisdiction they would be a part of the law-making power and not responsible for mistakes unattended with negligence or bad faith. But in the case before us the defendants, as we have said, were acting outside of their jurisdiction, and commanded an act to be done which the law had pronounced a crime. The defendants had the right to purchase land for a cemetery and they could make proper rules for its management, but that power could not be extended to give the town authorities the right to open the graves and remove the dead therefrom, from one point to another, without due process of law or without the consent of those persons whose permission is necessary.

VII. The 7th prayer for instruction is in the following words : " That, notwithstanding the defendants may have violated the letter of the law, yet if their acts do not come within its spirit and the mischief intended to be suppressed by it, then they would not be guilty, and that the mischief intended to be suppressed by the Statute is the desecration and robbery of the graves of the dead." The

121—76

Statute is absolutely clear in the language employed and is directed against all who disturb the last resting place of the dead, except those who act under the due process of law or who procure the permission to open the graves and remove the body from the surviving husband or wife, or the next of kin of the deceased, and of the person having control of such grave.    Why should it be thought that the law should apply to those only who open a grave or procure it to be done, and have removed dead bodies for purposes of medical or surgical knowledge or for purposes of larceny of anything buried with the body?    If a surgeon can be convicted for employing a person to open a grave and remove therefrom a dead body, his purpose being to advance medical and surgical science, what reason can be urged against the conviction of persons who command a grave to be opened and the body to be removed because the lot of land on which the deceased has been buried is not paid for by his next of kin ?    The sixth exception of the defendants is to that part of the charge which is in these words : " In that the Court instructed the jury that there was no due process of law." This exception is disposed of by what we have already said. The defendants had no authority themselves to do the act; they had no legislative authority; they had no authority from the Courts by judicial determination.    They acted in the face of a Statutory law, most humane and most salutary, and their conduct was what the law termed a felony. The last exception is untenable for the reason that his Honor did not charge the jury in the language complained of nor in language its equivalent.    No error.

Affirmed.