STATE OF NORTH CAROLINA v. KATHARINE MARIE ATWOOD

No. 21

(Filed 17 June 1976)

1. Criminal Law § 164— sufficiency of evidence — review on appeal

In a criminal case on appeal the court reviews the sufficiency of all the evidence to sustain the verdict, notwithstanding defendant failed to move for nonsuit at the conclusion of all the evidence. G.S. 15-173.1.

2. Automobiles § 3— driving while license suspended — requirements for conviction

A driver of an automobile must have actual or constructive knowledge of the suspension or revocation of his driver's license in order for there to be a conviction under G.S. 20-28(a).

State v. Atwood

3. **Automobiles § 3— driving while license suspended — notice of suspension mailed — presumption**

For purposes of a conviction for driving while license is suspended or revoked, mailing of the notice under G.S. 20-48 raises only a *prima facie* presumption that defendant received the notice and thereby acquired notice of the suspension or revocation.

4. **Automobiles § 3— notification by driver of address change — inapplicability to charge of driving while license suspended**

G.S. 20-7.1, which imposes a duty on licensees to notify the Division of Motor Vehicles within 60 days of each change of address, is not applicable to this case for driving while license was suspended, since the offense occurred in 1974 but the statute did not become effective until 1 July 1975.

5. **Automobiles § 3— driving while license suspended — insufficient notice of suspension to defendant — nonsuit proper**

In a prosecution of defendant for driving while her license was suspended, defendant's motion for nonsuit should have been granted where the evidence tended to show that the Department of Motor Vehicles mailed defendant one letter notifying her of her license suspension, but that letter was returned to the Department marked unclaimed by the post office, no further attempt was made at notification of defendant, when defendant was stopped by a police officer for driving while her license was suspended, she informed him that her address was different from that listed for her by the Department, defendant also told the officer that she did not know her license had been suspended, and defendant's mail was not forwarded by the post office from her address which the Department of Motor Vehicles had after her second permanent move within one year.

Justice EXUM concurring.

APPEAL of right by defendant pursuant to G.S. 7A-30(2) to review decision of the Court of Appeals reported in 27 N.C. App. 445, 219 S.E. 2d 521 (1975) (opinion by Hedrick, J., Britt, J., concurring, Martin, J., dissenting), upholding judgment of *Albright, J.,* at the 3 March 1975 Session of FORSYTH Superior Court.

Defendant was tried upon a warrant charging her with unlawfully and willfully operating a motor vehicle on a public street or public highway while her license was suspended, a misdemeanor under G.S. 20-28.

The State's evidence tends to show the following facts:

At approximately 4:00 a.m. on 19 October 1974 J. G. George of the State Highway Patrol observed defendant Katharine Marie Atwood enter a car and drive it on University

Parkway, a public highway. After running a license check and verifying his belief that defendant's license had been suspended, he stopped her and issued her a citation. The State introduced defendant's driver's license record showing among other things that (1) defendant was convicted on 18 June 1974 of speeding 60 m.p.h in a 45 m.p.h. zone (occurrence date: 11 June 1974), and was convicted on 28 August 1974 of speeding 70 m.p.h. in a 55 m.p.h. zone (occurrence date: 1 August 1974) ; (2) on 23 September 1974 defendant was mailed an order to notify her of the suspension of her driving license for two offenses of speeding over 55 m.p.h., to be effective from 3 October 1974 to 2 December 1974; and (3) the suspension order was returned unclaimed on 2 October 1974. The State's witness J. G. George testified on cross-examination that defendant told him she resided at Cedardale Lane in King, N. C., when he stopped her. He also testified that she told him that "she did not know her license was suspended and that no one had been in touch with her."

The order to notify defendant of the suspension stated that pursuant to G.S. 20-16 (d) the Department of Motor Vehicles (hereinafter referred to as "the Department") would afford defendant a hearing within 20 days after receipt of a written request. The order also stated that defendant was not entitled to operate a motor vehicle during the period of suspension pending the hearing. In an addendum to the record counsel stipulated that "it is the established policy of the Division of Motor Vehicles [the new name for the Department effective 1 July 1975] to grant a Preliminary Hearing, in all discretionary matters, upon request and the order of suspension or revocation is rescinded until such time as the Preliminary Hearing is conducted."

Defendant's motion for dismissal at the close of the State's case was denied.

Defendant's evidence tends to show the following facts:

On 19 October 1974 she was driving her car on Cherry Street or University Parkway when Officer George stopped her. The car was registered in her name. She did not know that her license had been suspended and had received no communication that her license had been suspended. She testified that she had an idea that she was going to lose her license but

did not make any effort to check when she would lose her license since she believed she would receive notice in the mail.

The Department's records for defendant, which were part of the State's evidence, indicated that her license was issued on 1 March 1973 and her address on 23 September 1974, the date the notice of suspension was mailed, was 646 McCreay Street, Winston-Salem, North Carolina. Defendant testified that she lived at the above address before January, 1974, residing there when her license was issued. She stated that she moved to 710 Hanes Avenue, Winston-Salem, N. C., and lived there from January, 1974 until she moved to Cedardale Lane, King, N. C., at the end of August 1974. She continued to live at King until the time of the trial. She testified that she filled out a change of address card when she moved to Hanes Avenue and mailed it to the Post Office. She received one forwarded letter at Hanes Avenue. When she moved in August to King, she again filled out a change of address card and mailed it to the Post Office. She stated that she did not receive much mail and had received no mail forwarded to her King address. She never sent a change of address notice to the Department.

The jury returned a verdict of guilty, and defendant was sentenced to thirty (30) days of imprisonment suspended for two years on payment of a fine of $200.00 and costs. Defendant appealed, and the Court of Appeals affirmed.

*Attorney General Rufus L. Edmisten by Associate Attorney James Wallace, Jr., for the State.*

*Herman L. Stephens for defendant appellant.*

COPELAND, Justice.

Defendant's appeal presents the following question:

1. Did the trial court commit prejudicial error in denying defendant's motion for nonsuit?

[1] The only motion for dismissal made by defendant was at the close of the State's evidence. By introducing evidence, she waived this motion. G.S. 15-173. In a criminal case, however, on appeal the court reviews the sufficiency of all the evidence to sustain the verdict, notwithstanding defendant failed to move for nonsuit at the conclusion of all the evidence. G.S. 15-173.1. *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974).

Defendant contends that the evidence was insufficient for a valid conviction under G.S. 20-28(a) for driving while her license was suspended because the State failed to prove beyond a reasonable doubt every fact necessary to constitute the crime. She contends that the State must prove a lawful suspension of her license. She argues that there was no showing of her license being lawfully suspended at the time of her arrest because the license was not suspended in accordance with the procedural due process required by the Fourteenth Amendment of the United States Constitution. In particular, she contends that requirements of procedural due process were not met because she had no actual notice of the proposed suspension and of her right to an opportunity to be heard prior to the effective date of the purported suspension and because she, in fact, had no opportunity to be heard prior to the effective date of the purported suspension.

The State contends that procedural due process does not require actual notice and that the constructive notice given in this case was adequate. The State contends that the constructive notice given was sufficient to provide an opportunity for defendant to have a hearing. The State argues that if defendant had properly submitted a change of address form with the Department then defendant would have had notice and an opporunity for a prior hearing if she had requested one. Notice was mailed on 23 September 1974 and would have been complete under G.S. 20-48 upon the expiration of four days. Since suspension was not effective until 3 October 1974, notice would be complete so that she might request and receive a hearing as much as six days before the suspension.

According to stipulation, the established policy of the Department is upon request to grant a preliminary hearing in a discretionary matter such as this and to rescind the order of suspension until such time as the preliminary hearing is conducted. In this regard, it might be noted that there was no evidence that defendant or others in her position were aware of this policy. G.S. 20-16(d) merely provides that a preliminary hearing shall be held within 20 days of receipt of request. The notice to defendant failed to disclose this policy of the Department when it stated that defendant was not entitled to operate a motor vehicle during the period of suspension pending the hearing.

We have previously held that a conviction under G.S. 20-28(a) requires that the State prove beyond a reasonable doubt (1) the operation of a motor vehicle by a person (2) on a public highway (3) while his operator's license is suspended or revoked. *State v. Cook,* 272 N.C. 728, 158 S.E. 2d 820 (1968); *State v. Blacknell,* 270 N.C. 103, 153 S.E. 2d 884 (1967); N.C.P.I.—Crim. 271.10 (October 1974).

**[2, 3]** However, we believe that the legislature also intended that there be actual or constructive knowledge of the suspension or revocation in order for there to be a conviction under this statute. We reach this conclusion for the reason that G.S. 20-16(d) requires the Department to provide notice and an opportunity for a hearing in order for there to be a lawful suspension. For purposes of a *conviction* for driving while license is suspended or revoked, mailing of the notice under G.S. 20-48 raises only a prima facie presumption that defendant received the notice and thereby acquired knowledge of the suspension or revocation. See *Willis v. Davis Industries,* 280 N.C. 709, 186 S.E. 2d 913 (1972); *Mill Co. v. Webb,* 164 N.C. 87, 80 S.E. 232 (1913). Thus, defendant is not by this statute denied the right to rebut this presumption.

**[4]** G.S. 20-7.1, which imposes a duty on licensees to notify the Division of Motor Vehicles within 60 days of each change of address, is not applicable to this case since it did not become effective until 1 July 1975. This statute leaves unchanged the fact that there is no duty imposed on the licensee to notify the Division of Motor Vehicles until 60 days after a move. Thus, because of the rapid mobility of society, this 60 days provision may render it impractical for adequate notice to be given to numerous violators. We conclude that it would be more practical if the time limit for giving notice of a change of address were substantially less.

In determining the question of judgment as of nonsuit, we consider all the evidence in the light most favorable to the State. *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975); *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). Furthermore, "the defendant's evidence which explains or makes clear the evidence of the State may be considered" as well as "defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's *evidence.*" (Emphasis supplied.) *State v. Bruton,* 264 N.C. 488, 499, 142 S.E. 2d 169, 176

(1965); *accord, State v. Blizzard,* 280 N.C. 11, 16, 184 S.E. 2d 851, 854 (1971).

"If, when the evidence is so considered, it is sufficient only to raise a suspicion or conjecture as to . . . the commission of the offense . . . , the motion for nonsuit should be allowed." *State v. Cutler, supra* at 383, 156 S.E. 2d at 682.

In *State v. Carter,* 254 N.C. 475, 479, 119 S.E. 2d 461, 464 (1961) we stated:

"And when the State's evidence and that of the defendant is to the same effect, and tend only to exculpate the defendant, his motion for judgment as of nonsuit should be allowed." [Citation omitted.]

[5] The State's evidence as to notice tended to show that the Department mailed one letter to defendant on 23 September 1974 to notify her of the suspension of her operator's license from 3 October 1974 to 2 December 1974. On 2 October 1974 the letter was returned to the Department, which marked it "ORDER UNCLAIMED." No further attempt was made by the Department to notify defendant of her suspension. On cross-examination the State's own witness testified that defendant told him she resided at Cedardale Lane in King when he stopped her and that "she did not know her license was suspended and that no one had been in touch with her."

Defendant's evidence in explanation of the State's evidence indicates that she did not live at the address to which the Department mailed the notice. She testified that she had moved twice since holding that address and that she had submitted change of address cards to the Post Office upon both moves. Her first move was within the same city. The fact that the notice was returned unclaimed indicates that pursuant to the regulations of the Post Office it discontinued forwarding defendant's mail from her first address after her second permanent move within one year. 39 C.F.R. § 158.2 (1974). Also, defendant testified that she had no notice or knowledge of suspension of her license.

Thus, all the evidence indicates that defendant had no notice or knowledge of suspension of her license. The evidence completely rebuts the prima facie presumption that the notice mailed to defendant's McCreay Street address was actually received. The lack of actual notice and resulting knowledge

removes the criminal character from defendant's conduct, and the court should have granted a nonsuit.

*State v. Teasley, supra,* is distinguishable from the present case because in *Teasley* defendant offered no evidence to rebut the prima facie presumption that notice was received upon the mailing, whereas here all the evidence rebuts that presumption.

On account of our disposition of the nonsuit issue it is unnecessary to consider defendant's contention as to the charge of the court.

Reversed.

Justice EXUM concurring.

I agree with the Court that the State's evidence negated defendant's culpability. I add these additional observations:

General Statute 20-28 (a) does not specify whether one must operate a motor vehicle *knowing* that his license has been suspended before he commits a violation of the section. Our traditional rule, however, is that when the General Assembly does not specify whether guilty knowledge, or *mens rea,* is required, the necessity of its existence will nonetheless be implied. *State v. Welch,* 232 N.C. 77, 59 S.E. 2d 199 (1950) ; *State v. Elliott,* 232 N.C. 377, 61 S.E. 2d 93 (1950) ; *State v. Powell,* 141 N.C. 780, 53 S.E. 515 (1906) ; *accord, Sweet v. Parsley,* [1969] 1 All E.R. 347 (House of Lords) ; *see* A. Loewy, Criminal Law in a Nutshell § 7.04B (1975).

The rule was first announced in *State v. Powell, supra,* where defendant had been convicted of retailing intoxicating liquor. The trial judge refused to admit evidence that defendant honestly and reasonably thought that what he sold was not alcoholic in nature. For this error this Court ordered a new trial holding that such evidence ought to be received and the jury properly instructed upon it. In a lengthy and well-reasoned opinion Justice Connor made these points: (1) General defenses to criminal liability are, as a matter of statutory construction, read into criminal statutes. (2) If the courts did not recognize these defenses then courts and statutes alike should be abated as public nuisances. (3) While ignorance of the law is no defense to a criminal accusation, mistake of fact is a complete

defense. (4) Punishment of one who acts under an honest and reasonable mistake of fact would serve as no deterrent to crime but would inflict a grievous injustice and would shock the moral sense of the community. (5) This defense has been applied to regulatory offenses as well as more heinous crimes. (6) The objection that the presence of the defense would facilitate evasions of the statute was rejected. (7) The State need not initially prove guilty knowledge. The burden is on the defendant to raise the issue of an honest and reasonable mistake of fact. (It is now, of course, uncertain whether *Mullaney v. Wilbur,* 421 U.S. 684 (1975) would require the State to prove knowledge beyond a reasonable doubt once the issue is properly presented. *Compare State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975) (self-defense and heat of passion) *with State v. Hammonds,* 290 N.C. 1, 224 S.E. 2d 595 (1976) (insanity).)

In *State v. Welch, supra* at 80, 59 S.E. 2d at 202, Justice Ervin said with reference to a claim of mistake of fact, "[i]t is axiomatic at common law that a crime is not committed if the mind of the person doing the act is innocent. The statutes relating to the unlawful transportation of intoxicating liquor are to be construed in the light of this common law principle, and the existence of guilty knowledge on the part of the accused is to be regarded as essential to criminality, even though it is not required by the statutes in express terms."

In *Poultry Co. v. Thomas,* 289 N.C. 7, 15, 220 S.E. 2d 536, 542 (1975) we recently said of another traffic violation:

"G.S. 20-150(c) is a safety statute enacted by the Legislature for the public's common safety and welfare. The statute does not contain the words 'knowingly,' 'willfully' or any other words of like import. It was the obvious intent of the Legislature to make the performance of a specific act a criminal violation and to thereby place upon the individual the burden to know whether his conduct is within the statutory prohibition."

That, however, was a civil case in which the only issue was whether plaintiff could recover from a negligent defendant when plaintiff passed at an intersection within city limits without knowledge or reason to know that he was within city limits. Criminal liability was not in issue. This difference is crucial. The only North Carolina criminal case cited by the majority in *Poultry Co.* was *State v. McLean,* 121 N.C. 589, 28 S.E. 140

(1897), which really involved ignorance of law rather than mistake of fact. *Poultry Co.* may be further distinguished in that the offense there considered, even if criminal, was a petty one punishable at most by a fine of $100 and imprisonment in jail for 60 days. N. C. Gen. Stat. 20-176(b). A violation of General Statute 20-28(a), however, is a general misdemeanor punishable by two years imprisonment, or a fine of not less than $200, or both. We said in *Poultry Co.*, "[w]e would not extend the rationale of this rule [due process does not require guilty knowledge] beyond petty offenses involving light punishment nor . . . to any crime involving moral delinquency." 289 N.C. at 15, 220 S.E. 2d at 542.

There are, of course, well recognized limits to a mistake of fact defense. It is not, for example, generally available to negate an element of a crime which merely aggravates what would otherwise be criminal or immoral conduct. *State v. Wade,* 224 N.C. 760, 32 S.E. 2d 314 (1944) (rape of a child under 12—mistake as to age is no defense); *Regina v. Prince,* 13 Cox Crim. Cas. 138 (Cr. App. 1875) (abduction of girl under age of 16 without father's consent—mistake as to age is no defense).

While allowing mistake of fact as a defense where the legislature is silent as to the requirement of guilty knowledge is perhaps contrary to the trend of recent authority in other states and England, *see* cases cited in *Poultry Co. v. Thomas, supra* at 13-14, 220 S.E. 2d at 541; *Regina v. Miller,* [1975] 2 All E.R. 974 (Ct. App. Crim. Div.), I believe to do so accords more with the ends of justice and well-reasoned North Carolina decisions to which I have already referred.

Mistake of fact as a defense does not seem to be required by the Federal Constitution. *United States v. Balint,* 258 U.S. 250 (1922); *Cf. United States v. Park,* 421 U.S. 658 (1975). Whether strict criminal liability of a substantial nature *when expressly mandated by the General Assembly* would be violative of the Law of The Land Clause of the North Carolina Constitution, Article 1 § 19, need not now be determined. See *Comm. v. Koczwara,* 397 Pa. 575, 155 A. 2d 825 (1959), for persuasive authority that such an enactment would be unconstitutional.

Applying the foregoing principles to a prosecution under General Statute 20-28(a) where the suspension or revocation

was a discretionary act, I believe that when the State proves beyond a reasonable doubt that defendant was operating a motor vehicle on a public highway while his license was lawfully suspended or revoked, notice of such suspension or revocation having been given pursuant to General Statutes 20-16 and 20-48, nothing else appearing, the jury should be instructed to find the defendant guilty. Guilty knowledge, in other words, is not a necessary element of the crime to be proved in the state's case in chief. Neither is receipt of notice necessary in order for the suspension or revocation to be effective or lawful. Defendant's lack of knowledge of the suspension or revocation is a mistake of fact defense which ordinarily is raised by defendant.

Where, however, as here, the State's own evidence is that defendant drove honestly and reasonably without knowledge of the suspension or revocation, nonsuit is proper because the State has made out a mistake of fact defense. In a case where only the defendant's evidence tends to prove an honest and reasonable mistake of fact, the State should not be nonsuited. Rather the issue of mistake of fact should be presented to the jury upon proper instructions. Important on this issue would be the rebuttable presumption that a duly mailed notice of suspension or revocation was duly received. While proof of mailing of the notice and the expiration of four days thereafter is proof of a valid suspension or revocation, N. C. Gen. Stats. 20-16, 20-48, this proof may or may not satisfy a jury, even with the presumption, that defendant actually knew of the suspension if his evidence tends to show he did not.