Battle, J.
The bill of exceptions filed by the prisoner, presents only one question upon which there can be the slightest doubt. If counsel pray an instruction, in a voice so low, or under such circumstances, that the presiding Judge does not hear it, his omission to give it cannot be regarded as a neglect or refusal; and unless the jury were misled by the bare omission, it is not error. In this case the prisoner could not be prejudiced by it, because the rule, that the jury must be satisfied beyond a reasonable doub't, of his guilt, before they can find him guilty, .was expressly stated by his counsel, and admitted by the solicitor for the State. Moreover, it could apply only to the fact of the homicide; for if the jury found that against the prisoner, the Judge very properly said “that every matter of excuse, mitigation, or justification, ought to be shown by him.” The burden of proof in such case, being shifted from the State to the prisoner, it was incumbent upon him to establish the matter of excuse or mitigation beyond a reasonable doubt.
There is but a single question, then, presented for our decision, and that is, whether there was any testimony which the Judge ought to have submitted to the jury as tending to prove a mitigation in the character of the homicide, and thus reduce it from murder to manslaughter. In assuming that to be the sole question, we had taken for granted what the Attorney General has, with a proper degree of candor, conceded, that the emphatic manner in which the Judge asked the jury, “ what evidence there was to reduce the offence to manslaughter ?” was equivalent to telling them that there was no such evidence. See McRae v. Lilly, 1 Re. 118. State v. Noblett, 2 Jones’ Rep. 418. If there were no evidence upon the point in dispute, then it was the duty of the Judge so to declare; *274 but if otherwise, then, we admit that he ought to have submitted it to the jury, without intimating to them an opinion upon its sufficiency or its weight.
In examining this question, we must constantly bear in mind that it assumes the killing of the deceased by the prisoner as an established fact, and that he must show us the testimony which mitigates his offence. This his counsel contends that he has done by the testimony, which proves that on the evening when the transaction occurred, the parties were on friendly terms 5 that no express malice was shown; that Mrs. Smithy heard a “lumbering at prisoner’s house, something like chairs that the distance between Mrs. Smithy’s house and the prisoner’s Was too great to enable the witnesses to distinguish the voice of the deceased from that of the prisoner; and that all these circumstances had a tendency to prove that there was a mutual combat, or scuffle, between the parties. It is said also, as a confirmation of this view, that, from the appearance of the bruises and wounds on the deceased, and from the fact that no blood was found on the bed, or anywhere else, except on the floor where the deceased lay, he must have got out of the bed, and been standing on the floor when he received the mortal blow on the back of his head. In considering whether these circumstances ought to be allowed to have the effect contended for, we must collate them with the other circumstances which formed a part of the same transaction, and judge of the whole together. Erom the testimony of Wilson and Allen, it appears that, late in the afternoon of the day when the homicide was committed, the prisoner and the deceased drank spirits together, until the latter became so drunk that it was thought proper to put him on the prisoner’s bed; that about an hour after dark, the “ lumbering, as of chairs,” spoken of by Mrs. Smithy, or the “ noise,” as it was called by the witnesses Wilson and Joseph Smithy, was heard up at the prisoner’s house, and then these witnesses heard the voice of the deceased crying out, “ O Lordy!” and that of the prisoner saying, “ if you don’t shut your mouth I will kill youthat Wilson, upon hearing his name called by the pris *275 oner, went up to his house and found him with his coat off, his sleeves rolled up, and the shovel in his hand, and he then said, “ here is Dimond dead as hell, and I have killed him.” The next day, however, he denied that he had killed the deceased, and alleged that the deceased had killed himself, or that some person out of doors had killed him 5 but he did not on the night of the homicide, or at any other time, pretend that the deceased had made an attack upon him, or that he had got into a fight, or even scuffle, with him. He had no wound of any kind upon him, and there was nothing in the appearance of his clothes, or of the room, to indicate that there had been a mutual combat. Whatever appearance there was of wounds or bruises, was upon the deceased alone. Whatever indications there were of violence, from the outcries of the parties, were that the deceased was a sufferer, and the prisoner was beating him. Under these circumstances, could the prisoner ask that the Court should leave it to the jury to infer a mutual combat between him and the deceased, from the single fact that a noise was heard in his house ? In deciding whether there be any evidence to be submitted to a jury, the Judge must necessarily be governed by the impression which the alleged testimony makes upon his mind. The question is admitted to be oftentimes a very difficult one, but he must decide it as he does every other question which the law makes it his duty to decide, according to the honest convictions of his understanding. He cannot shrink from his duty and throw the responsibility upon the jury, by allowing them to conjecture the existence of a fact where there is no testimony tending to establish it. The same duty will, upon an appeal in such case, devolve upon the Judges of the appellate tribunal, and they must decide in like manner, upon the honest convictions of their understanding. With an earnest desire to decide correctly, we have come to the conclusion, that the prisoner has not shown us any evidence of a mutual combat between him and the deceased, and that his Honor who presided at the trial, committed no error in so instructing the j ury.
This opinion must be certified to the Superior Court, to the *276 end that the sentence of the law may be pronounced upon the prisoner.