STATE v. KATIE MITCHELL DEESE JOHNSON.

(Filed 29 April, 1964.)

**1. Criminal Law § 85—**

The State is bound by exculpatory statements of defendant introduced in evidence by it when such statements are not contradicted or shown to be false by any other evidence.

**2. Criminal Law § 101—**

When the State's evidence and that of defendant are to the same effect and tend to exculpate defendant, motion for nonsuit should be allowed.

**3. Homicide § 13—**

While the intentional killing of a human being with a deadly weapon raises the presumption that the killing was unlawful and done with malice, this rule of law does not mean that the burden of showing an unlawful killing does not rest with the State.

**4. Homicide § 20—**

Where defendant's evidence as well as the State's evidence upon the point disclosed that defendant was in her home with the screen door hooked, that deceased was drunk and had theretofore assaulted defendant, and after being told to leave began arguing and cursing, that defendant went to the kitchen and procured a knife and when deceased broke open the door and attempted to grab her, stabbed him with the knife, inflicting fatal wounds, *is held* to warrant nonsuit, since the evidence affirmatively establishes self-defense.

**5. Homicide § 9—**

A person in his own home who is free from fault in bringing on the difficulty is not required to retreat in the face of an assault, regardless of its character, but is entitled to stand his ground and repel force with force so as to overcome the assault and secure himself from harm, provided excessive force is not used.

APPEAL by defendant from *Armstrong, J.,* October 1963 Session of CABARRUS.

Criminal prosecution upon a bill of indictment charging defendant with the murder of one Charles Walker. Defendant pleaded not guilty. The jury found defendant guilty of manslaughter and judgment was entered imposing an active prison sentence.

*Attorney General Bruton and Assistant Attorney General Bullock for the State.*

*B. W. Blackwelder for defendant.*

PER CURIAM. Defendant assigns as error the denial of her motion for nonsuit.

For evidence of the *corpus delicti* the State relies entirely upon a statement made by defendant to a police officer shortly after the occurrence, in substance as follows: Defendant was at her home about 9:00 o'clock Saturday night, 27 July 1963. With her at the time were Dot Sims and six small children. Her mother was on the porch. A 10-year old boy was the only male person present. There was a knock at the door. Defendant told Dot to go to the door and if it was Charlie

STATE *v.* JOHNSON.

Walker to tell him she was not at home and to go away. Defendant was lying on the bed. Dot opened the door and, seeing that it was Charlie, did as defendant had instructed her. Charlie called Dot a G . . D . . . liar and began to argue with her. Defendant got up, went to the door and asked Charlie to leave. He was on the porch and the screen door was hooked. He continued to argue and began jerking the door; he was drinking. Defendant went to the kitchen and got a butcher knife, returned to the door and started talking to him; he continued to argue and curse. He succeeded in snatching the door open and stepped inside. He grabbed at her and she stabbed him once. Charlie "keeps a knife" but she did not see a weapon at the time. He went outside and fell in the yard. An ambulance was called. Defendant was at home when the police came a few minutes later. Charlie had been there once before on that night.

The door had been fastened with a hook and "keeper" or "eye." When the police came they found that the "keeper" was not "ringed" but was straightened out.

Defendant's testimony, corroborated by the testimony of others, tends to show: Deceased was about 48 years old; defendant was 36. He did not live at defendant's home; he had been her boy friend and on occasions she had cooked for him. She had been married and had borne 14 children, one was dead. Charlie was not the father of any of her children, though 6 were illegitimate. On the night in question defendant's mother had come to the house while Charlie was attempting to break open the door and tried to keep him from entering. Defendant had no intention of killing him, but was trying to "keep him off of" her because she was afraid of him. He had come to her house earlier that night and asked her to go off with him. He was drinking. When she refused to go he slapped her and she hit him, he grabbed her and told her he was going to break her G . . D . . . neck. Her son parted them, and she told Charlie to leave and not come back. Charlie left, and a little later defendant's son also left. Charlie returned about 9:00 P.M. when the incident occurred which resulted in his death. Three or four months before, Charlie had assaulted defendant with an ax and fractured three of her ribs. She did not prosecute him for it because he threatened to kill her if she took out a warrant. Her daughter, who was assaulted by him on the same occasion, did indict him and the case was pending at the time of his death.

Ordinarily, when a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to

stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. This, of course, would not excuse the defendant if he used excessive force in repelling the attack and overcoming his adversary. *State v. Francis,* 252 N.C. 57, 112 S.E. 2d 756; *State v. Frizzelle,* 243 N.C. 49, 89 S.E. 2d 725.

When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements. While the intentional killing of another with a deadly weapon raises the presumption that the killing was unlawful and done with malice, this rule of law does not mean that the burden of showing an unlawful killing does not rest with the State. When the State's evidence and that of the defendant are to the same effect and tend only to exculpate the defendant, motion for nonsuit should be allowed. *State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461.

Defendant's motion for nonsuit should have been allowed in the instant case. She was in her home with the screen door hooked. Deceased had no right to be there; he had been told to stay away and when he came was told to leave, his response was argument and cursing. He had been drinking. Twice before he had assaulted her, once with an ax and once by choking; he had threatened her. He broke open the door and attempted to grab her. She had the right to stand her ground, protect her person, prevent the invasion of her home and remove him from the premises. She was not required to engage him with her bare hands or wait until he seized her before taking action. Under the circumstances she did not, as a matter of law, use excessive force, but acted in the proper defense of her person and habitation.

The judgment below is

Reversed.