STATE OF NORTH CAROLINA v. TONY WAYNE PARKER

No. 7827SC423

(Filed 17 October 1978)

**Homicide § 21.8 — second degree murder — self-defense claimed — sufficiency of evidence**

Evidence was sufficient for the jury in a second degree murder prosecution and the evidence did not show self-defense as a matter of law where such evidence tended to show that defendant and his companions who were armed

approached the home of deceased seeking information about some earlier beatings; deceased pulled a gun on defendant and his companions; defendant wrestled with deceased; one of defendant's companions saw defendant shoot deceased in the side; and deceased's body bore three gunshot wounds, one of which was made by firing a weapon while it was against the skin of deceased.

APPEAL by defendant from *Snepp, Judge.* Judgment entered 8 December 1977 in Superior Court, GASTON County. Heard in the Court of Appeals 31 August 1978.

Defendant was charged in a bill of indictment, proper in form, with the offense of murder in the first degree of one John Hastings on 7 May 1977. Evelio Antonia Badia, Eric Harlan Bryant, John Edward Burnette, and Robert Frank Wyatt were indicted as codefendants. At the trial, Wyatt was granted immunity in exchange for his testimony against the other defendants. Cases were consolidated for trial. At the close of the State's case, the charges against defendants Bryant, Badia, and Burnette were dismissed. Defendant was found guilty of murder in the second degree by a jury and was sentenced by the trial judge to a term of not less than twelve years nor more than fifteen years in the State Prison. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Douglas A. Johnston, for the State.*

*Frank Patton Cooke and R. T. Wilder, Jr., for defendant appellant.*

ERWIN, Judge.

The defendant brings forward two assignments of error, contending, first, that the trial court committed prejudicial error in failing to grant his motion for judgment as of nonsuit at the close of all of the evidence after the motion was denied at the close of the State's case. We do not find error.

A motion for judgment as of nonsuit challenges the sufficiency of the evidence to go to the jury. *State v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913 (1955). The trial judge is required "to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom." *State v. Goines,* 273 N.C. 509, 513, 160 S.E. 2d 469, 472 (1968). All admitted evidence which is favorable to the

State, whether competent or incompetent, must be taken into account and so considered by the trial court when ruling upon the motion. *State v. Crump*, 277 N.C. 573, 178 S.E. 2d 366 (1971); *State v. Clyburn*, 273 N.C. 284, 159 S.E. 2d 868 (1968); *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

The State's evidence tended to show that Russell Sidney Correll and Mack Teal fought with John Burnette and Frank Wyatt at the King's Mountain Men's Club on the morning of 7 May 1977; John Hastings, an employee of the club, was present but was not involved in the fight; Burnette and Wyatt left and went to the clubhouse of the Brothers Motorcycle Club; other club members including the defendant arrived, and they all went looking for Correll and Teal; defendant, Burnette, Wyatt, and Bryant were in one car, and Badia, Nadulek, and Webber were in another car; defendant was armed with a .38 Colt Cobra, Wyatt with a 9 mm pistol and a .44 caliber pistol; Bryant and other occupants of the cars were also armed.

This group of men went to a motorcycle shop and were told to go to see John Hastings to find out why Correll and Teal had beaten up Wyatt and the Burnettes. They all drove to Hastings' house.

Robert Frank Wyatt testified:

"[M]r Badia was walking alongwide [sic] me. When we got within about ten or fifteen feet of the porch, Mr. Badia asked John Hastings if he knew where he could find Max Teal or Sid Correll. When Mr. Badia asked John that question, as soon as he got it out of his mouth, John said, 'If you are looking for trouble, you're fucking up,' and pulled his gun. At this time Mr. Parker was standing on the porch. Mr. Burnette had one foot on the porch and one foot on the ground. I moved to the left toward the Fire Station when Mr. Hastings came out with his gun from under his shirt. Seemed like simultaneously, when Mr. Hastings pulled his gun out, there was shot, and Mr. Burnette staggered. Burnette was on the porch, had one foot on the porch. He was spinning around, just toward the street, his face was.

In response to your question as to how long did Mr. Burnette spin or remain upright, it wasn't long, not long at

all. He spun around and when he fell, he was laying on his back. His back was laying on the porch. His feet were dangling off the porch. At the time Mr. Burnette was spinning, Mr. Parker and Mr. Hastings were wrestling. It looked like more or less wrestling. He had John around the neck. Mr. Parker had John Hastings around the neck with his arm, his left arm. At that time I couldn't see Mr. Parker's right hand, but when they broke free from each other, Mr. Parker shot him in the side, right about here. It was right under your arm, right here in the rib cage toward your back. This side here.

. . .

In response to your question as to how many times did Mr. Parker fire the gun after I saw him fire into the left side of John Hastings, my answer is no more. He didn't shoot any more times. After Mr. Parker left, John Hastings was lying on the porch. I tried to pick Mr. Burnette up. He was bleeding very bad out of his face. He had been shot in the face. I pulled him up with one arm, and that guy called Cody, he started helping me, and I picked Mr. Burnette up. Mr. Burnette's pistol was laying underneath him. I picked his pistol up, a Browning 9 mm."

Dr. Wilton M. Reavis, Jr. (pathologist in the Office of the Chief Medical Examiner in Chapel Hill, who performed an autopsy on the body of John Arthur Hastings) testified:

"[E]xterior examination of the body of John Hastings revealed three gunshot wounds present on the body; two gunshot wounds were present on the back of the head; and a third gunshot wound was present on the back near the left armpit.

. . .

Based upon my examination of the body of John Hastings in the course of my autopsy examination, I formed an opinion satisfactory to myself as to the cause of death of John Hastings, and that opinion is that John Hastings died as a result of three gunshot wounds."

Dr. Reavis further testified that one of the head wounds was a "contact wound. That is, the muzzle of the weapon was against

the skin of the decedent at the time the weapon was fired." He also opined that the wounds were larger than .22 caliber and smaller than .45 caliber.

Defendant testified:

"[N]o, sir, John wasn't on the porch when I got out of the car and started walking up there. He came out right as we were approaching about five feet away from his steps. I said, 'John, do you know where Sid or Max could be found. Eddie and Frank had a little dispute with him, and they thought they were friends, and they want to straighten it out.' He said, no, he hadn't seen Sid or Max. About this time Frank Wyatt and Tony Badia was coming right up the drive, right up the pathway in front of the steps. Tony Badia was in front of Frank Wyatt, and he said, 'Hello, John, you know where Sid or Max is,' and John said, 'No, boy, but I want to tell you something, you came here looking for trouble you done fucked up.' He pulled gun out and he fired.

Standing up and showing the jury where his gun was, he had his shirt open like this right here, he had the gun stuck right in here. He flipped the shirt like that, grabbed the gun and came out and fired right toward Mr. Badia. Then someone hollered, 'Grab the gun.' I grabbed towards the gun like this and John shot my arm and it hit against the wall like this, and as I was falling, I got my pistol out of my pocket and fired. I don't know how many times I fired, my arm was hanging halfway off like this. I was panicky. I was in a state of shock. I thought the man was going to shoot me in the head. I thought he had done shot Asphalt. I seen Asphalt fall. The next thing I remember is getting up off the porch and going and getting in the car."

Defendant contends that the State's evidence affirmatively established the defendant's "self-defense"; that the evidence of defendant seems only to "elucidate and add dimension to the evidence already introduced by the State. The appellant's (defendant's) evidence was entirely consistent with that of the State." The defendant relies on *State v. Atwood,* 290 N.C. 266, 225 S.E. 2d 543 (1976), and *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169 (1965). Again we disagree with defendant and find no merit in this assignment of error.

In review of the record before us, we find sufficient evidence for the trial court to submit this case to the jury on the charge of murder in the second degree and sufficient evidence to support a conviction of murder in the second degree. The question of whether or not the defendant acted in defense of himself was a valid jury question. Here, the defendant was armed as were all of his friends when they went to the home of the deceased. Of the numerous shots that were fired, defendant testified that he did not know how many times he had fired his .38. The gun was apparently never found, and there was expert medical testimony that one of the wounds was a contact wound and that the wounds were made by projectiles between .22 and .45 caliber.

*State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84 (1964), cited by the defendant, does not support his contention that the trial court should have granted his motion for judgment as of nonsuit by reason of self-defense as a matter of law. In *Johnson, supra,* the defendant was in her own home with the screen door hooked; deceased was drunk and had previously assaulted defendant, and after being told to leave began arguing and cursing; defendant went to the kitchen and procured a knife, and when deceased broke open the door and attempted to grab her, she stabbed him with the knife, inflicting a fatal wound.

Secondly, the defendant contends that the trial court committed prejudicial error in failing to grant his motion to set aside the verdict as being contrary to law and the evidence.

We hold that the verdict returned by the jury was not contrary to law for the reason set out above. A motion to set aside a verdict as being contrary to the greater weight of the evidence is addressed to the trial judge's sound discretion, and his ruling thereon will be upheld absent a showing of abuse of discretion. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975), *cert. dismissed,* 423 U.S. 918 (1975); *State v. Mason,* 279 N.C. 435, 183 S.E. 2d 661 (1971).

In the trial below, we find no prejudicial error.

No error.

Judges PARKER and CLARK concur.