STATE OF NORTH CAROLINA
v.
TERRY CLAY EDWARDS.
No. COA06-1569
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Mark A. Davis, for the State.
Parish & Cooke, by James R. Parish, for Defendant.
McGEE, Judge.
Terry Clay Edwards (Defendant) was convicted on 11 April 2006 of second-degree murder and robbery with a dangerous weapon. The trial court sentenced Defendant to a term of 189-236 months in prison on the charge of second-degree murder, and to a consecutive term of 77-102 months in prison on the charge of robbery with a dangerous weapon. Defendant appeals.
The evidence presented at trial tended to show the following: Defendant's brother, Ed Edwards (Edwards), was on trial in April 2005 for an unrelated felony assault. Corey Clay (Clay), a cousin of Edwards and Defendant, was an eyewitness to the assault and testified at Edwards' trial. Prior to Clay's testimony at Edwards' trial, Defendant had left a message on Clay's answering machinethreatening to harm Clay if Clay testified against Edwards. After receiving this threat, Clay attempted to obtain a warrant against Defendant, but was unsuccessful.
Edwards was found guilty at his felony assault trial on 26 April 2005. Detective Rob Weatherford (Detective Weatherford) of the Wilson Police Department had been present in the courtroom during Edwards' trial. According to Detective Weatherford, Defendant also had been present in the courtroom during Edwards' trial and became visibly angry and upset when the verdict was read. Defendant told his mother that he needed to go for a walk and calm down, and Defendant left the courthouse. Defendant made a number of short stops and then walked to Clay's house. One of Clay's neighbors later saw Defendant leaving Clay's house. The neighbor said that Defendant was walking quickly and was carrying a plastic bag. Clay's roommate testified that he returned home from work later that afternoon and found Clay lying on the floor in a puddle of blood. An autopsy revealed that Clay had died from a stab wound to his chest. In addition, Clay had suffered numerous knife wounds to his neck, cuts on his chest and hand, scrapes on his face, and bruises under his scalp and near his left collar bone. The physician who performed the autopsy testified at trial that the parallel arrangement of Clay's multiple neck wounds suggested that Clay was not moving at the time the wounds were inflicted.
Detective Johnny Hendricks (Detective Hendricks) of the Wilson Police Department interviewed Defendant the following day. Defendant was informed of his Miranda rights and gave a statementto Detective Hendricks. Detective Hendricks later read Defendant's statement into evidence at trial. In his statement, Defendant admitted leaving a phone message for Clay. Defendant also admitted that he was very upset after the verdict in Edwards' felony assault case. According to Defendant's statement, by the time Defendant arrived at Clay's house, he had calmed down and was no longer upset with Clay. Defendant and Clay shook hands, and Clay went to the kitchen to get a beer for Defendant. Defendant claimed that Clay returned from the kitchen with a knife and lunged at Defendant, believing that Defendant had come to the house to kill him. Defendant attempted to convince Clay that he did not intend any harm, but Defendant was unsuccessful. Defendant and Clay fought and Clay was injured. After the fight, Defendant put Clay on a couch and then noticed that the knife had fallen to the floor and had blood on it. Defendant claimed he then panicked, and quickly decided to clean up the scene. Defendant found a trash bag and placed a number of items in the bag, including the knife and Clay's telephone. Defendant then apologized to Clay and left Clay's house with the bag.
After giving his statement to Detective Hendricks, Defendant led police to the trash bag that he took from Clay's house. Detective Hendricks testified that police recovered a broken knife and Defendant's bloody sweat pants from the bag, as well as a number of household items, including a telephone, clock, music box, candle holder, ashtray, and picture frames. A forensic examination of the knife and sweat pants revealed that the blood on those itemsbelonged to Clay. In addition, Defendant's DNA was found under Clay's fingernails.
Defendant's testimony at trial was consistent with the statement he gave Detective Hendricks regarding the telephone message and the events that led to Clay's death. Defendant also admitted that he stabbed Clay in the throat with the knife found in the trash bag. The trial court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter, as well as robbery with a dangerous weapon and common law robbery. The jury convicted Defendant of second-degree murder and robbery with a dangerous weapon.
Defendant appeals. Defendant argues that the trial court should have dismissed both charges against him due to insufficiency of the State's evidence. We find no error.

I.
Defendant first assigns error to the trial court's failure to dismiss the charge of robbery with a dangerous weapon due to the insufficiency of the evidence against him.
To survive a motion to dismiss based on insufficient evidence, the State must present "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence exists if, considered in the light most favorable to the State, the evidence "gives rise to a reasonable inference of guilt." State v. Jones, 303 N.C. 500, 504,279 S.E.2d 835, 838 (1981). However, a defendant's motion to dismiss must be granted "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it[.]" Powell, 299 N.C. at 98, 261 S.E.2d at 117.
The elements of robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87 are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." State v. Call, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). Defendant asserts that the State's only evidence concerning the taking of Clay's property was Defendant's statement to Detective Hendricks:
I looked around at the mess. I decided to clean up. I started picking up the pictures we knocked over. I saw the knife on the floor. The knife had blood on it. I panicked and decided to clean up. I went into the kitchen and grabbed a trash bag. I put some pictures in the bag, candle holders, the knife and the phone. I put everything in the bag because I was scared. . . . [Clay] looked at me and I told him I was sorry. . . .
I took the clear plastic bag with all the stuff I picked up. I locked [Clay's] door and left with the bags.
Defendant claims that this evidence, even taken in the light most favorable to the State, suggests only that Defendant took the property as a mere afterthought to the assault. Therefore, according to Defendant, he did not actually use the knife to effectuate the taking, thus negating the second and third elementsof the offense.
To be convicted on a charge of robbery with a dangerous weapon, "the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." State v. Olson, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992). Further, if the victim dies as a result of use of the deadly weapon, it does not matter that the victim died before the taking actually occurred, so long as the death and the taking comprised one continuous transaction. See State v. Fields, 315 N.C. 191, 201, 337 S.E.2d 518, 524 (1985) (noting that the fact "[t]hat the victim is already dead when his possessions are taken has not previously been an impediment in this jurisdiction to the defendant's conviction for armed robbery").
Defendant relies on Powell to demonstrate that his taking of Clay's property was a mere afterthought to the assault. In Powell, the State's evidence tended to show that the defendant raped, strangled, and stabbed the victim in her bedroom. Powell, 299 N.C. at 97, 261 S.E.2d at 116. The defendant then took a carving knife and a small television from the victim's house, as well as the victim's automobile, but the defendant did not ransack or otherwise disturb the victim's belongings. Id. The physical evidence suggested that the victim was murdered in her bedroom during the rape, before the defendant committed the larceny. Id. at 102, 261 S.E.2d at 119. Therefore, our Supreme Court held, the evidence "indicate[d] only that [the] defendant took the objects as anafterthought once the victim had died." Id. The Court noted that while the crimes of rape, murder, and armed robbery can be committed in one single transaction, the facts in Powell did not show one single transaction. Id.
Defendant's reliance on Powell, however, is unavailing. In our present case, there is sufficient evidence that Defendant killed Clay and took Clay's property in one continuous transaction. By Defendant's own admission, while he was placing the items in the plastic bag, "[Clay] was still sitting on the couch. [Clay] looked at me and I told him I was sorry." Unlike in Powell, where the evidence tended to show that the victim was murdered during an act of rape that preceded the taking, Defendant's statement in this case gives rise to an inference that shortly before the taking, Clay, though still conscious, had been rendered helpless by Defendant's use of a knife. Clay's incapacitation at the hands of Defendant allowed Defendant to conceal the assault by removing certain property and exiting Clay's house without interference. Defendant's own version of the facts is sufficient to establish the type of continuous transaction that our Supreme Court did not find in Powell. See State v. Davis, 325 N.C. 607, 631, 386 S.E.2d 418, 430-31 (1989), cert. denied, 496 U.S. 905, 110 L. Ed. 2d 268 (1990) (distinguishing Powell where the evidence gave rise to "a reasonable inference that [the] defendant engaged in a purposeful search of the victim's apartment, at least some part of which occurred in her presence against her will and by putting her in fear"). Defendant contends that he decided to clean up the scene only after the assault occurred, which proves that the taking was a mere afterthought to the assault. However, the fact that Defendant may have formed the intent to take Clay's property only after Defendant's use of force does not separate an otherwise continuous transaction into two distinct occurrences. See Fields, 315 N.C. at 203, 337 S.E.2d at 525 (holding that "when the circumstances of the alleged armed robbery reveal [the] defendant intended to permanently deprive the owner of his property and the taking was effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the theft and the use or threat of force can be perceived by the jury as constituting a single transaction"). Nor is the wrongful taking excused simply because Defendant was panicked or scared, or because he desired to "cover up" the incident. See State v. Green, 321 N.C. 594, 605, 365 S.E.2d 587, 594, cert. denied, 488 U.S. 900, 102 L. Ed. 2d 235 (1988) (finding a single transaction and affirming the defendant's armed robbery conviction despite the defendant's claim that he removed his victims' wallets "to conceal the identities of the murder victims, [as] an afterthought following the commission of the crimes"); Fields, 315 N.C. at 202, 337 S.E.2d at 525 (noting that "mixed motives do not negate actions that point undeniably to a taking inconsistent with the owner's possessory rights"); State v. Webb, 309 N.C. 549, 557, 308 S.E.2d 252, 257 (1983) (holding that even though the defendant was scared and confused afterkilling the victim, and only took the victim's car in order to flee, the defendant's armed robbery conviction was supported because he "never intended to return the car and . . . he took it and disposed of it . . . with indifference to the rights of the car's owner").
We hold that the State presented substantial evidence that Defendant committed each element of the offense of robbery with a dangerous weapon. Therefore, the trial court did not err by denying Defendant's motion to dismiss.

II.
Defendant next assigns as error the trial court's failure to dismiss the charge of second-degree murder due to insufficiency of the State's evidence.
The elements of second-degree murder under N.C. Gen. Stat § 14-17 are: "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." State v. Coble, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000). Defendant asserts that all of the State's evidence presented at trial conclusively established that he acted only in self-defense, thus negating elements (1) and (3).
Indeed, there was evidence presented at trial to support a claim of self-defense. For example, multiple witnesses testified that, prior to April 2005, Clay and Defendant frequently socialized and enjoyed each other's company. Clay's roommate testified that, in the time between Defendant's threatening phone call to Clay and Clay's death, Clay and Defendant continued to interact with eachother socially, without incident. Defendant's statement to Detective Hendricks asserted that after the threatening phone call, Defendant and Clay had settled their differences. Most importantly, Defendant's statement and trial testimony also consistently identified Clay as the initial aggressor in the incident that led to Clay's death. According to Defendant, the State introduced no evidence to rebut Defendant's claim of self-defense. Specifically, the State introduced into evidence Defendant's statement to Detective Hendricks, but did not offer any evidence inconsistent with Defendant's version of the facts contained therein  that Clay, unprovoked, lunged at Defendant with a knife.
It is true that "[w]hen the State introduces into evidence a defendant's confession containing exculpatory statements which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by the exculpatory statements." State v. Williams, 308 N.C. 47, 66, 301 S.E.2d 335, 347, cert. denied, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). In State v. Johnson, 261 N.C. 727, 136 S.E.2d 84 (1964), for example, the State's evidence against the defendant consisted entirely of the defendant's statement to police. Id. at 728, 136 S.E.2d at 85. According to the defendant's statement, the defendant's ex-boyfriend came to her home and demanded to enter. When the defendant refused his request, the man became belligerent, forced his way through the defendant's door, and tried to grab the defendant. The defendant then stabbed the man with a kitchenknife. Id. at 728-29, 136 S.E.2d at 85. The defendant also testified that her ex-boyfriend had previously assaulted her with an axe, and had also assaulted and threatened her earlier that evening. Id. at 729, 136 S.E.2d at 86. The defendant was convicted of manslaughter. Id. at 728, 136 S.E.2d at 85. Finding no evidence in the record to contradict the defendant's version of the facts, our Supreme Court reversed her conviction, holding that "[w]hen the State's evidence and that of the defendant are to the same effect and tend only to exculpate the defendant, motion for nonsuit should be allowed." Id. at 730, 136 S.E.2d at 86. Also, in State v. Carter, 254 N.C. 475, 119 S.E.2d 461 (1961), the State's uncontroverted evidence established that the defendant's father was the initial aggressor, and that the defendant killed her father only to prevent him from inflicting serious physical harm upon the defendant's mother. Id. at 476-78, 119 S.E.2d at 462-63. Reversing the defendant's manslaughter conviction, the Court noted that the evidence "plainly negatives the existence of an unlawful killing. The exculpatory statements of the defendant are not contradicted or shown to be false by any other fact or circumstance in evidence." Id. at 479, 119 S.E.2d at 464.
Johnson and Carter, however, are distinguishable from the case before us. In the present case, the State did not rely entirely on Defendant's exculpatory statements to prove his guilt. Rather, the State presented substantial physical and circumstantial evidence to rebut Defendant's self-defense claim, including, inter alia: (1) Defendant had previously threatened Clay's life; (2) Defendant waspresent in court and reacted with visible anger when Edwards was found guilty; (3) Defendant went to Clay's house shortly thereafter, during which time Clay received deadly stabbing wounds; (4) the pattern of the stabbing wounds indicated that Clay was already incapacitated and motionless when he received those wounds; (5) Defendant received no apparent injuries during the incident; and (6) Defendant's immediate reaction to the altercation was to clean up the scene, hide his bloody clothes, and take Clay's telephone, preventing Clay from calling for help. See State v. Lane, 3 N.C. App. 353, 354-55, 164 S.E.2d 618, 619 (1968) (distinguishing Carter where the defendant's claim that the killing was accidental was contradicted by the State's evidence that the defendant and the decedent had previously quarreled, and that the defendant's use of a knife was intentional).
Defendant essentially argues that the State was required to present eyewitness testimony to contradict Defendant's version of the altercation. This argument is without merit. The jury was instructed on self-defense, and could properly consider any competent evidence presented at trial to determine whether Defendant's account of the altercation was credible. See State v. Hankerson, 288 N.C. 632, 636-38, 220 S.E.2d 575, 580-81 (1975), rev'd on other grounds, 432 U.S. 233, 53 L. Ed. 2d 306 (1977) (finding sufficient evidence to distinguish Johnson and Carter, and holding that "[w]hile none of these circumstances taken individually flatly contradicts [the] defendant's statement, taken together they are sufficient to `throw a different light on thecircumstances of the homicide' and to impeach the defendant's version of the incident" (quoting State v. Bright, 237 N.C. 475, 477, 75 S.E.2d 407, 408 (1953))).
In the alternative, Defendant argues that the State's evidence was sufficient only to raise a jury question of whether Defendant used excessive force to defend himself from Clay's alleged attack. This argument is also without merit. As explained above, the State introduced substantial evidence that Defendant was the aggressor in the altercation. Therefore, the jury was not limited to the question of whether Defendant used permissive or excessive force in his own self-defense. The charge of second-degree murder was properly before the jury.
We hold that the State presented substantial evidence that Defendant committed each element of the offense of second-degree murder. Therefore, the trial court did not err by denying Defendant's motion to dismiss the charge.
No error.
Judges STEPHENS and SMITH concur.
Report per Rule 30(e).